Marvin L. WARNER, Plaintiff,

v.

GLOBAL NATURAL RESOURCES PLC, et al., Defendants.

No. C–1–82–820.

United States District Court, S. D. Ohio, W. D.

Sept. 3, 1982.

---

Charles J. Faruki, Dayton, Ohio, for plaintiff.

Thomas B. Ridgley, Trial Atty., Columbus, Ohio, for Global Natural Resources PLC.

Mark A. VanderLaan, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, McFarlane Oil Co., Inc.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter is before the Court upon the written motion filed August 25, 1982 by Global Natural Resources PLC (Global) that this Court, in the person of The Honorable S. Arthur Spiegel, should disqualify itself in this case "on the ground that the Court is so connected with the plaintiff as to render it improper for the Court to sit on any proceeding in this action" (doc. 10). More specifically, Frank G. Beatty, president of Global and an individual defendant in this case, and a stranger to the undersigned, asserts by way of affidavit filed August 27, 1982 that Mr. Warner and I are friends and therefore:

1) that I have a personal bias or prejudice in favor of the plaintiff in this matter, Marvin L. Warner (Warner),

2) that in the circumstances of this matter, my impartiality might reasonably be questioned, and

3) at least an appearance of impropriety has been created by my failure to disqualify myself and in the absence of disqualification, such appearance of impropriety will continue to taint these proceedings.

(doc. 18).

Defendant's motion is based upon 28 U.S.C. § 144 and 28 U.S.C. § 455.

Section 144 provides in pertinent part:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the Judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceedings.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists. . . .

Section 455(a) provides:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

On the morning of August 23, 1982, plaintiff Marvin Warner filed his verified complaint in this action and a motion for a temporary restraining order (docs. 1 and 2). In essence, the motion asked the Court for an order prohibiting the completion of a proposed transaction between defendants Global and McFarlane Oil Company, Inc. (McFarlane Oil).

At the time the motion was filed, we were engaged in another civil trial. Nevertheless, we agreed to hear arguments on the temporary restraining order that after-

noon because of the alleged urgency of the matter.

The hearing commenced at 2:30 that afternoon. Plaintiff was represented by counsel, as was defendant Global. None of the other defendants were present or represented by counsel. At the start of the hearing I advised counsel of my acquaintance with Mr. Warner and that it had come to my attention after being appointed to the Bench that Mr. Warner had supported my nomination. I stated that Mr. Warner's support of my nomination would in no way affect my ability to be impartial in this case. I also indicated that I believed this was the first case involving Mr. Warner that had come before the Court.

Mr. David Cupps, attorney for Global, thereafter made a statement that this was likely to be a high visibility case because it was being characterized in the newspapers as a battle for corporate control. He asserted that the evidence would show that this was plaintiff's third attempt for injunctive relief and that:

> Whether given those factors, and the additional statement that you made on the record, whether this is a case in which there is an appearance that is unfortunate, and whether you want to consider sending this case to one of your brethren.

We did not consider Mr. Cupps' statement a motion to recuse and informed him that we would consider the question of recusal as we proceeded.

Thereafter, the Court heard oral arguments from plaintiff and defendant Global for four hours. On August 24, we filed our decision granting the temporary restraining order and indicated we would file our Opinion "instanter" (doc. 9). Subsequent to our Order granting the temporary restraining order, but before our Opinion was filed, Global filed the motion to disqualify that is before the Court today (doc. 10). The Opinion in support of our decision granting the temporary restraining order was filed on August 25 (doc. 14). A supplemental motion in support of defendant's motion to disqualify was filed on August 27 and contained the above-referenced affidavit of Frank Beatty. In addition to the contentions noted above, Mr. Beatty also asserted that the fact that the Court granted plaintiff's motion for a temporary restraining order "confirms the overwhelming appearance of impropriety which arises from the relationship between Warner and Judge Spiegel" (doc. 18).

Plaintiff filed a memorandum in opposition to defendant's motion for disqualification on August 25, 1982 (doc. 15), and a supplemental memorandum in opposition filed August 30, 1982 (doc. 22). Attached to plaintiff's response is an affidavit signed by Marvin Warner, stating that he and I have had only limited contacts over the years, that he was never a client of my former law firm, and that he never had any business relationships, or any intimate or personal relationships with the undersigned. He stated that his support of my nomination to the Bench was prompted by a call from Senator Howard Metzenbaum who asked Mr. Warner to contact Senator Howard Hefflin of Alabama, after Mr. Warner indicated to Senator Metzenbaum his opinion that I would make a good member of the Court. Mr. Warner stated that I knew nothing about his support at the time. Mr. Warner stated that in his opinion, I am not connected with him or biased in his favor in this litigation, nor am I prejudiced against any of the defendants.

A telephone conference in this matter was held by the Court and counsel on August 27, 1982. At that time, Global informed plaintiff and the Court that it had filed a petition for a writ of mandamus with the United States Court of Appeals for the Sixth Circuit. Such petition requested a writ of mandamus commanding this Court to disqualify himself from further proceedings in this action and to vacate the temporary restraining order, or to command the Court to vacate the temporary restraining order and show cause why I should not disqualify myself.

As part of its argument to the Court of Appeals, defendant asserted that in April of 1981 this Court had disqualified itself in another case involving a company of Mr.

Warner's, *i.e., MGIC v. Home State Savings*, (No. C–1–81–320) because of Mr. Warner's support of my nomination and that the prior recusal showed that I was biased in favor of Mr. Warner. A transcript of the conference wherein the Court decided to disqualify itself in *MGIC* was attached to defendant's petition to the Court of Appeals. The Court's statement at the time was that I did not think it wise for me to take a case involving Mr. Warner because of the way others might view our participation, and that I would ask the Chief Judge to reassign the case. At the time, I had been on the Bench for ten months.

On September 1, 1982, the Sixth Circuit issued its Order dismissing the petition for a writ of mandamus. The Court found that "mandamus does not lie to compel a district judge to recuse himself," and that it could not, therefore, consider the merits of petitioner's arguments at this stage of the proceedings.

The motion for disqualification is presently ripe for decision by this Court and it is to this matter that we now turn.

At the occasion of my swearing in as Judge of the United States District Court, I stated:

> Many people have helped me to reach this point in life, and I thank them from the bottom of my heart. Those who opposed me I respect for doing what they felt they had to do. Hereafter, I will be deciding cases in this courtroom based on the evidence coming from the witness stand and the law as interpreted by the Supreme Court of the United States and the Sixth Circuit Court of Appeals. The identity and personality of the lawyers, whether friends or foes in the past, will have no bearing; all will be strangers and will be treated courteously and fairly by the court. ..., and I pledge to you hard work in the remaining years of my life, in the pursuit of equal justice for all under law.

Global makes much of the fact that the Court voluntarily recused itself from a case involving Mr. Warner sixteen months ago, and that this somehow constitutes evidence that the Court has stated its inability to decide a case involving Mr. Warner in a fair and impartial manner. In response, I can only say that the transition from attorney to Judge is a difficult one. I practiced law in this community for over thirty-one years and naturally am acquainted with many of the attorneys and parties who come before the Court. Despite my comments at the swearing-in ceremony, I was concerned when assuming this position that the Court's ability to fairly decide cases involving such persons might be questioned; and, out of an abundance of caution, the Court may initially have recused itself in more cases than necessary. My views on recusal of the Court, however, have changed in the more than two years I have been on the federal bench. I am now confident of my ability to decide the merits of cases that come before me in a fair and impartial manner, regardless of prior associations I may have had with the parties. I also now believe that an appearance of impropriety is not created every time a person with whom I am acquainted comes into this Court. We have had a number of opportunities in the last two years to decide cases involving acquaintances of the Court and believe that we rendered as fair a decision as the litigants would have received in any Court. We are also sure that the community was watching carefully in many of those cases.

I recognize, of course, that in some instances I must recuse myself, as when a former law partner or close friend comes before my Bench, but my previous association with Marvin Warner in no way approaches the type of relationship I now believe mandates my recusal. Whereas, I may have been unsure sixteen months ago whether to accept a case involving Marvin Warner, I have learned many things in the more than two years I have served on the Bench, and am now fully confident of my ability to be fair and impartial in any matter concerning Mr. Warner; and, therefore, that there was no reason for the Court to recuse itself at the time this case was filed.

I have decided, therefore, not to disqualify myself in this case. We have given the

matter careful consideration and have concluded that a reasonable person would not believe that this Court would be biased in favor of Mr. Warner based on our limited association or his support for my nomination to the Bench. There were many people who supported my nomination, and while I am grateful for the confidence they have shown in me, I in no way feel that I owe them anything. They are all strangers in this courtroom. To recuse oneself based on such a slight association would be unfair to my colleagues and to the public. It also would invite many unwarranted motions of a similar type whenever a judge assigned to a case has had some prior relationship with any of the parties before him.

Moreover, we do not believe that the law was designed to reach the type of situation involved in this case. In the case of *Schultz v. Newsweek*, 668 F.2d 911 (6th Cir. 1982), a very similar situation was presented to the Court of Appeals. While that case was pending before Judge Kennedy in the district court, she was nominated to fill a newly created position on the Sixth Circuit Court of Appeals. The *Detroit News*, one of the defendants in that case, supported the appointment of Judge Kennedy in published editorials and at least one signed column. Plaintiff filed a motion under 28 U.S.C. § 144 and § 455(a), asking Judge Kennedy to recuse herself on the ground her impartiality could reasonably be questioned. Judge Kennedy denied the motion and stated that "a reasonable person would not believe that a judge would be influenced in favor of a newspaper because it wrote complimentary things about her." *Id.* at 919. The Sixth Circuit found it was not an abuse of the Judge's discretion to deny the motion to recuse. *Id.* at 920.

In another case, Judge Damon Keith, sitting by designation on the Bench of the United States District Court for the Eastern District of Michigan, was asked to recuse himself in a case filed against the City of Detroit by persons challenging the promotion policies of the Detroit police force. *Baker v. City of Detroit*, 458 F.Supp. 374 (E.D.Mich.1978). Plaintiffs in that case asserted that Judge Keith and Coleman

Young, Mayor of Detroit, were friends and that Mayor Young was one of the persons who had submitted Judge Keith's name for consideration for appointment to the Sixth Circuit Court of Appeals and that he had spoken at Judge Keith's swearing-in ceremony. Plaintiffs argued that the relationship between Judge Keith and Mayor Young created an appearance of impropriety that required Judge Keith to disqualify himself. *Id.* at 376.

In his opinion denying plaintiffs' motion, Judge Keith acknowledged his friendship with Mayor Young but stated:

> This relationship, however, does not support a claim of lack of impartiality because it is not supported by 'facts which would raise a reasonable inference of lack of impartiality in the context of the issues presented' in this case.

*Id.* at 377, *citing Parrish v. Board of Commissioners of Alabama State Bar*, 524 F.2d 98, 103–04 (5th Cir. 1975). There was no allegation of personal bias made in that case.

This matter was originally presented on the theory of appearance of impropriety and based on the foregoing cases we are confident that no such appearance exists. It was later asserted, however, that this Court is, in fact, personally biased in favor of Mr. Warner as evidenced by the decision in Mr. Warner's favor on the temporary restraining order. We respectfully disagree that a decision against one party is evidence of bias in favor of the other, and we find that such claim is not a sufficient statement of fact to support the allegation of bias so as to require my disqualification in this case. Mr. Frank Beatty, affiant who swore to the Court's bias in favor of Mr. Warner does not know me and bases his conclusion of bias on nothing more than the decisions made in this case thus far. This unsupported statement is offset by the sworn statement of Mr. Warner that he believes the Court is not biased in his favor. Furthermore, the Sixth Circuit has held that the "actions of a judge in pending or previous litigation in which the movant has been

involved are not grounds for disqualification under § 144." *Southerland v. Irons,* 628 F.2d 978, 980 (6th Cir. 1980).

Defendant's statement that the Court refused to allow it to file its papers at the hearing is clearly not true, as evidenced by the transcript of the proceedings and also does not support defendant's motion for disqualification.[1]

We recognize that defendant's attorneys are doing their utmost for their clients, and we bear no animosity towards any party. I would have no business being a judge if I resented having my decisions questioned on appeal and was unable to continue to treat all parties equally and fairly. Whether or not the defendants agree with our decision today, it is now time to proceed with the issues remaining before the Court. We intend to begin the hearing on plaintiff's motion for a preliminary injunction on Tuesday, September 7, 1982, at 9:30 A.M., as planned.

For the foregoing reasons, defendant's motion to disqualify is hereby denied.

SO ORDERED.

1. THE COURT: Do you have something else?
MR. CUPPS: Yes. If Your Honor can seriously entertain the last application Mr. Faruki made, I would like to be heard very briefly to that.
THE COURT: You may.
MR. CUPPS: And I also seek a point of instruction from Your Honor. We have with us, gathered from various sources, the record from the chancery trial. It is, of course, voluminous because it was an extensive trial and has a very, very considerable amount of evidential matters, both on behalf of plaintiff in chancery, the representative of Mr. Warner's group of Requisitionists, and also the evidence on behalf of Global, the defendant there.
If Your Honor would wish to have that available, we can make it available to the Court. If you would prefer to deal in the first instance of what you have been given so far and come to this but if only it is needed, that is also desirable. It is entirely up to you.

\* \* \* \* \* \*

THE COURT: I would rather proceed step-by-step as we go in this case with the guidance of Counsel. If I'm disposed to grant a Temporary Restraining Order, we will see how much further we have to go, rather than become too confused—
MR. CUPPS: I understand.

THE COURT: I'll try to decide this and have a decision on this by the close of business tomorrow; that's about as close as I can get to it. As you can see, I recessed the trial. I was trying to accommodate you. And we are starting at 9 o'clock tomorrow morning in another courtroom. This courtroom is occupied by the school case. I'll try to get it as quickly as I can.
MR. CUPPS: I'll quickly make a response to Mr. Faruki's generous offer to turn this into a Preliminary Injunction: If I had been invited to a Preliminary Injunction hearing, I would have brought something like live witnesses and affidavits. And I really didn't have the time between Saturday night and now to put on a full court press. I think it would be improvident to grant that branch of his motion. Thank you.
THE COURT: No, I'm not going to consider this as a Motion for Preliminary Injunction. The defendants—they would be taken completely by surprise. Although I agree with you, much of what occurred here today is probably a more thorough hearing than you have on an ordinary Temporary Restraining Order.
MR. FARUKI: All right. Let me withdraw that at the present.
(doc. 36, pp. 102–105).