**Robert JORDAN, Plaintiff,**

v.

**GLOBAL NATURAL RESOURCES, INC., Defendant.**

No. C-1-82-978.

United States District Court, S.D. Ohio, W.D.

Feb. 22, 1983.

Gene Mesh, Cincinnati, Ohio, for plaintiff.

Thomas B. Ridgley, Columbus, Ohio, for defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

SPIEGEL, District Judge:

█ This matter is before the Court upon the motion to dismiss filed by defendant (doc. 6), plaintiff's response (doc. 7) and defendant's reply. Because defendant submitted an affidavit of its president in support of its contention that plaintiff has failed to state a claim upon which relief can be granted under Section 10(b) and that this Court has no jurisdiction over the defendant, those matters shall be considered as motions for summary judgment pursuant to Rule 12(b), Fed.R.Civ.P. For the reasons set forth below we find that defendant's motion is not well-taken and should be denied.

Defendant, Global Natural Resources (Global), is a public limited company incorporated under the laws of Great Britain. Global is engaged in the exploration and sale of oil and gas. Nearly all of the shares of Global are "bearer" shares, and there is no way to identify all of the Global shareholders. Global, therefore, communicates with its shareholders primarily through advertisements and letters placed in financial newspapers worldwide. Global also communicates privately and through broker-dealers and financial institutions with any known Global shareholders. Shares of Global stock are traded on the London Stock Exchange and Over-The-Counter in the United States.

In April of 1982, a group of shareholders publicly announced their intention to take control of the Global board of directors at the upcoming shareholders meeting (the Requisitionists). Soon thereafter, Global began negotiations for a take-over of the McFarlane Oil Company (McFarlane Oil). McFarlane Oil was a privately held American corporation also engaged in the oil and gas business that had been associated with Global in the past. On June 21, 1982 Global and McFarlane Oil entered into an agreement whereby McFarlane Oil was to be merged into a newly created subsidiary of Global in exchange for 3.25 million authorized but unissued shares of Global stock, plus some cash and bonds.[1] The transaction was to be completed by August 7, 1982 but was delayed pending litigation.[2]

---

1. The existing law of England did not require shareholder approval of the acquisition.

2. This proposed transaction was the subject of a separate suit filed by one of the Requisitionists seeking to take control of Global. A motion to enjoin the take over was denied. *War-*

During the summer of 1982, the incumbent directors and the Requisitionists engaged in a bitter proxy battle. Each side placed advertisements in major newspapers urging Global shareholders to vote for their respective slate of directors. Global also sent letters to those shareholders it could identify through its own records or records of dealer-brokers and financial institutions. As part of its effort to remain in control of Global, the incumbent board issued a number of statements regarding the financial worth of Global and of the McFarlane Oil deal. The Requisitionists issued an equal number of statements questioning the board's management of Global and asserting that Global was paying too much to acquire McFarlane Oil just to perpetuate the control of the incumbent board of directors.[3] The McFarlane acquisition ultimately was concluded on September 3, 1982. Global's annual meeting was held on September 13, 1982 and all but one of the former directors were reelected to the board.

Plaintiff Robert Jordan thereafter filed this class action complaint on behalf of himself and all persons who purchased shares of the common stock of defendant Global during the time period from March 20, 1982 to September 8, 1982.[4] Plaintiff alleges that defendant issued public communications regarding the proposed acquisition by Global of McFarlane Oil and that such communications contained material misrepresentations and omissions which caused the price of Global common stock to be artificially inflated. Plaintiff asserts that defendant's original statements caused the value of Global stock to sell at approximately $12.75 per share and that subsequent disclosure that the transaction was unfair to Global caused the value of the stock to decline to $8.75 per share on September 8, 1982. Plaintiff alleges further that Global's negotiations with McFarlane Oil and the subsequent transfer of Global shares for McFar-

lane Oil shares at a value "grossly unfair" to plaintiffs and to Global, were "deceptive and manipulative acts, practices and devices intentionally done to artificially inflate the market price of the Global shares at the expense of the class, but done in order to obtain for the incumbent directors of Global the approval of the class and the stockholders of Global." The plaintiff alleges that defendant also engaged in a plan and scheme to defraud the plaintiff and the class and that all of the conduct alleged was reckless, intentional and willful and violates both Section 10(b) of the Securities and Exchange Act of 1934 (the Act) and Rule 10b–5 promulgated thereunder (Count I). Plaintiff alleges further that defendant breached its fiduciary duty to plaintiff and others who purchased stock during this period of time (Count II).

Defendant presents a number of legal arguments in support of its motion. They will be considered separately.

▮ Defendant argues first that plaintiff has failed to state a cause of action under Section 10(b) of the Act and Rule 10b–5 promulgated thereunder. As stated above this aspect of defendant's motion must be considered as a motion for summary judgment. Therefore, the narrow question which we must decide is whether there is no "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion but is empowered only to determine whether there are issues to be tried. 10 Wright & Miller, *Federal Practice and Procedure: Civil,* § 2712 at 379 (1973). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence, together with all inference to be drawn therefrom, must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,*

---

ner v. *Global Natural Resources, PLC,* 545 F.Supp. 1298 (1982).

**3.** The Requisitionists alleged that McFarlane Oil stockholders were to be given seats on the

board in return for their support of the incumbent board.

**4.** The motion for class certification has not yet been filed.

600 F.2d 60, 63 (6th Cir.1979) (emphasis in the original).

Defendant contends that the complaint, at most, states a cause of action for a breach of fiduciary duty and corporate mismanagement, neither of which are actionable under Federal Securities Law, citing *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Defendant asserts further that plaintiff's claim that the McFarlane Oil acquisition was a "manipulative device" in violation of section 10(b) of the Act is not supported by the facts or the law as set forth in *Santa Fe, supra* and *Mobil Corp. v. Marathon Oil Co.,* 669 F.2d 366 (6th Cir.1981). Defendant also contends that plaintiff's claims arise out of statements made in a proxy fight and that defendant, as a foreign corporation, is not subject to section 14(a) of the Act, 15 U.S.C. § 78n(a), which prohibits dissemination of false or misleading statements in connection with a proxy solicitation.[5] Therefore, argues defendant, plaintiff has stated no cause of action under the Federal Securities Laws.

Section 10(b) of the Securities Exchange Act of 1934 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 promulgated thereunder reiterates the first part of section 10(b) and makes it unlawful for any person:

(1) To employ any device, scheme or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they were made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.[6]

We note at the outset that a section 10(b)/Rule 10b–5 claim for relief is to be liberally construed in order to effectuate the policies underlying the Federal Securities Laws. *See e.g. Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972); *Superintendent of Insurance v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1074 (6th Cir.1979). We find that under the facts and law presented, plaintiff has stated a cause of action under section 10(b) and Rule 10b–5.

We agree with defendant that *Santa Fe* stands for the proposition that mere allegations of unfair treatment, corporate mismanagement, or breach of corporate fiduciary duty do not state a cause of action under section 10(b) and that such conduct, standing alone, does not constitute a "manipulative device" under the Act. This case, however, easily is distinguishable from *Santa Fe.* In *Santa Fe* defendant, Santa Fe Industries, Inc., purchased ninety-five percent of the shares of another company (Kirby) and perfected a merger of the two companies pursuant to Delaware's "short-form merger" statute. Plaintiffs, minority shareholders of Kirby who were dissatisfied with the amount of money defendant offered for their stock, filed suit under sec-

---

5. *See* 15 U.S.C. § 78*l*(g)(3) and S.E.C. Rule 12(g)(3) which specifically exempts foreign corporations from regulation under the proxy rules.

6. There is no express private cause of action provided under section 10(b) but an implied cause of action has long been recognized by the Courts. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976).

tion 10(b) alleging that the Kirby stock had been fraudulently appraised in an effort to squeeze out the minority shareholders. The Court found that the minority shareholders were furnished with all relevant information necessary to decide whether to accept the price offered for their stock, or to reject it and seek an appraisal in state court as provided by statute. *Id.* 430 U.S. at 474, 97 S.Ct. at 1301. The Court stated:

> Those cases [relied on by plaintiffs] forcefully reflect the principle that '[§] 10(b) must be read flexibly, not technically and restrictively' and that the statute provides a cause of action for any plaintiff who 'suffer[s] an injury as a result of deceptive practices touching its sale [or purchase] of securities ...' *Superintendent of Insurance v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12–13 [92 S.Ct. 165, 168–169, 30 L.Ed.2d 128] (1971). But the cases do not support the proposition, ... that a breach of fiduciary duty by majority stockholders without any deception, misrepresentation, or nondisclosure, violates the statute and the Rule.

*Id.* at 475–76, 97 S.Ct. at 1301–1302. Because there was no deception or nondisclosure the Court found there was no section 10(b) violation. *Id.* at 474, 97 S.Ct. at 1301.

The Court also found that the alleged conduct, standing alone, was not "manipulative" within the meaning of the statute. *Id.* at 476, 97 S.Ct. at 1302. The Court concluded that the term manipulation "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Id.* at 476, 97 S.Ct. at 1302 citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). The Court found this definition consistent with the fundamental purpose of the Act: "[T]o substitute a philosophy of full disclosure for the philosophy of caveat emptor ..." 430 U.S. at 477, 97 S.Ct. at 1302, quoting *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972).

In this case, plaintiff alleges that defendant intentionally engaged in deceptive practices that artificially inflated the value of Global stock on the market and that plaintiff and others purchased Global stock at this inflated price. We find that this states a cause of action under section 10(b). These allegations are significantly different than the facts presented in *Santa Fe* and allege far more than a mere breach of fiduciary duty or corporate mismanagement. The allegation of deception absent in *Santa Fe,* is present here. *See Goldberg v. Meridor,* 567 F.2d 209, 218 (2d Cir.1977).

Defendant argues, however, that because plaintiff admits that defendant's intent was to further the control of the incumbent directors, rather than to manipulate the price of shares on the market, that no section 10(b) violation has occurred. We disagree. The United States Court of Appeals for the Sixth Circuit, in line with a number of other Circuit Courts of Appeal, has ruled that a showing of recklessness can satisfy the scienter requirement set forth by the Supreme Court in *Ernst & Ernst, supra. See Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1025 (6th Cir. 1979). Plaintiff herein alleges that defendant intentionally disseminated false and misleading statements and omitted information necessary to make the information not misleading. The fact that defendant may not have intended its alleged deception to effect the value of Global shares on the market is not fatal to plaintiff's claim. Anytime a plaintiff suffers an injury as a result of deceptive practices in connection with the purchase or sale of a security, section 10(b) is an available remedy. *Superintendent of Insurance v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). *See also Mensbach,* 598 F.2d at 1026–27. If defendant acted as plaintiff alleges, for the purpose of perpetuating the control of the incumbent board, and if defendant's actions caused an artificial value to be placed on the Global stock, this Court could conclude that defendant acted with a reckless disregard for the effect of its actions on the market, giving rise

to a section 10(b) violation. This type of action explicitly was recognized by the Sixth Circuit in *Mensbach, supra,* wherein the Court distinguished a section 10(b) action for manipulation of the securities market from a section 10(b) action for the issuance of misleading corporate publicity. *Id.* at 1025.

■ We also find that the activities alleged could be considered "manipulative" within the meaning of the Act. In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976), the Supreme Court ruled that the term manipulative "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or *artificially affecting* the price of securities." (emphasis added). In *Mobil v. Marathon Oil,* 669 F.2d 366, 374 (6th Cir.1981), the Sixth Circuit reasoned that the term "artificial" as used by the Supreme Court in *Ernst & Ernst,* refers to "means unrelated to the natural forces of supply and demand." The Court then went on to quote the Eighth Circuit Court of Appeals as follows:

> The methods and techniques of manipulation are limited only by the ingenuity of man. The aim must be, therefore, to discover whether conduct has been intentionally engaged in which has resulted in a price which does not reflect basic forces of supply and demand.

*Id.* at 374, quoting *Cargill, Inc. v. Hardin,* 452 F.2d 1154, 1163 (8th Cir.1971), *cert. denied,* 406 U.S. 932, 92 S.Ct. 1770, 32 L.Ed.2d 135 (1972).

Under this reasoning, defendant's alleged misrepresentations and omissions and its public statements concerning the value of Global and the McFarlane Oil deal could be construed as manipulative devices in contravention of the Act. Plaintiff clearly alleges that defendant intentionally engaged in conduct which resulted in a price which did not reflect the basic forces of supply and demand. This is sufficient to state an allegation of manipulation under the Act.

■ Defendant argues further, however, that plaintiff has not alleged any reliance on the alleged false and misleading information and that this also is fatal to his section 10(b) claim. Again we must disagree. It is well-settled that in nondisclosure cases, proof of reliance is not a prerequisite to recovery under section 10(b): "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making [his] decision." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472–1473, 31 L.Ed.2d 741 (1972); *see also The Toledo Trust Company v. Nye,* 588 F.2d 202, 207 n. 21 (6th Cir.1978).[7]

This definition of materiality was further refined by the Supreme Court in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), a case arising under the proxy rules:

> [Materiality] does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused a reasonable investor to change his vote. What the standard does contemplate is a showing of substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.

■ Defendant argues that because the alleged deceptive statements were made in the midst of a proxy fight, and because the shareholders also received contrary in-

---

7. We also note, while reserving judgment on the issue, that a number of courts have held that proof of reliance is not necessary in a case alleging only misrepresentation, as well as in nondisclosure cases. These Courts espouse the "fraud on the market" theory. *See Panzirer v. Wolf,* 663 F.2d 365 (2d Cir.1981); *Ross v. A.H. Robins,* 607 F.2d 545 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *In re LTV Securities Litigation,* 88 F.R.D. 134 (N.D.Tex.1980).

formation from the Requisitionists, the shareholders could not possibly have been misled by anything the defendant said or failed to say. Defendant argues that the "total mix" of information made available to plaintiff and other purchasers, negated any omissions or misrepresentations that may have occurred. Defendant cites a number of cases in support of its position, all of which involve actions under Section 14 for violation of the proxy rule.

We recognize that many of the statements were made while defendant and the Requisitionists were engaged in a proxy fight. But, as noted above, plaintiff's allegations also bring defendant's conduct within the purview of Section 10(b) and Rule 10b-5. As such, the materiality analysis of *Northway* applies and we find that plaintiff has stated facts from which this Court could conclude that the information disseminated by defendant would have had a significant impact on plaintiff's decision to buy Global stock. The question whether the information supplied by defendant caused an artificial inflation in the price of Global stock is one for the jury to consider. The fact that there was contrary information available in the market place certainly is relevant, but it is not a basis for granting summary judgment.

 Finally, we find that plaintiff is not precluded from bringing an action under Section 10(b) just because he also may have a cause of action under Section 14 of the Act. The two provisions involve distinct causes of action and if plaintiff can prove a violation of Section 10(b), the fact that the conduct may also violate Section 14 does not defeat plaintiff's right to recover under Section 10(b). *See Herman & McLean v. Huddleston,* —— U.S. ——, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Sec. v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); *Warner v. Global Natural Resources, PLC,* 545 F.Supp. 1298 (1982).

 Defendant also asserts that Count II should be dismissed for failure to state a cause of action. Count II alleges that defendant breached its common law duty of care and loyalty to plaintiff and the class.

No materials outside the pleading have been submitted in support of this aspect of defendant's motion and a motion to dismiss under Rule 12(b)(6) is applicable.

The Sixth Circuit, in *Westlake v. Lucas,* 537 F.2d 857 (6th Cir.1976), stated the standard for review of motion under Rule 12(b)(6): (1) All allegations in the complaint are taken as true; the complaint is to be construed liberally in favor of the party opposing the motion; (2) The complaint need not set down in detail all particularities of plaintiff's claim; (3) Rule 8(a)(2) simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief;" (4) The complaint need only afford the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests; (5) A motion to dismiss under Rule 12(b)(6) should not be granted "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 537 F.2d at 858, quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

For reasons set forth below, we find that defendant's motion to dismiss Count II should be denied.

 Defendant argues that Global has no fiduciary duty to its shareholders and cannot, therefore, be held liable for any breach. Defendant asserts that an actionable breach of fiduciary duty occurs only when the fiduciary benefits itself and not the beneficiary; had Global benefitted itself through a breach of fiduciary duty, no claim could be asserted on behalf of Global shareholders. We understand defendant to be arguing that any benefit to the corporation inures to the benefit of the shareholders as well and that the shareholders cannot, therefore, complain of any injury therefrom. We cannot agree. A fiduciary may breach his obligations without direct benefit to himself. A person in a fiduciary relationship with another has an affirmative obligation to act in that persons best interests. If the fiduciary acts to the detriment of the beneficiary, no matter who

benefits from his actions, the fiduciary duty has been breached. Defendant's argument on this point, therefore, appears to be without merit.

 We conclude, however, that a corporation as an entity has no fiduciary duty to its shareholders as a matter of law. We have engaged in extensive research and have found nothing to indicate that a fiduciary relationship exists between a corporation and its shareholders. Rather, a corporation is a legal entity created and regulated by statute in derogation of the common law. The rights and obligations of a corporation and its shareholders are defined by statute and remedies are provided for breach of statutory duties. We can find no authority that would allow this Court to impose a common law fiduciary duty on the part of Global to its shareholders and we, therefore, decline to do so.

 This finding does not dispose of defendant's motion, however. A corporation, because of its nature, may act only through its officers and agents. It may, therefore, be held vicariously liable for the acts of its officers and agents acting within the scope of their actual or apparent authority under the doctrine of *respondeat superior. See Holloway v. Howerdd,* 536 F.2d 690, 695 (6th Cir.1976); 10 Fletcher, *Cyclopedia Corporations,* § 4886 (1978). It is a well recognized principle that directors of a corporation have a fiduciary duty to the corporation, and it is often found that the obligation extends to the shareholders as well. *See Ohio Drill & Tool Co. v. Johnson,* 625 F.2d 738, 742 (6th Cir.1980). It is conceivable, therefore, that plaintiff could recover against the corporation if he could establish that the directors, acting within their actual or apparent authority, breached a duty owing to plaintiff and the class. We recognize that plaintiff has not clearly articulated a cause of action against Global based on the doctrine of *respondeat superior,* but under the most liberal view of the complaint, we find that such a cause of action can be read into the allegations of Count II.

We do not intend to rule herein either that the directors of Global have a fiduciary duty to Global shareholders or that Global has any liability for the actions of its directors. This issue was not well briefed by either party and we are reluctant to make any dispositive ruling on the matter at this point in time. We hold only that for purposes of this motion to dismiss, we cannot find "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). We must, therefore, deny defendant's motion to dismiss Count II, but note that we expect the issue to be fully briefed upon motion for summary judgment so that all legal issues may be disposed of prior to trial.

Defendant's second ground for relief is that the complaint should be dismissed because it fails to plead fraud with the particularity required by Fed.R.Civ.P. 9(b), which states in pertinent part:

In all averments of fraud of mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Defendant asserts that plaintiff has made no more than conclusory allegations with regard to the alleged misrepresentations and/or omissions of fact and that plaintiff has failed to allege any basis for his belief that defendant in fact committed any fraud.

 Federal Rule of Civil Procedure 9(b) is to be read in conjunction with Rule 8(a) which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. 5 Wright & Miller, *Federal Practice and Procedure* § 1298, at 406. We find that under this standard plaintiff has pleaded his case with sufficient particularity. The complaint sets forth the subject matter of the alleged fraud, the McFarlane Oil deal, and asserts that the fraud was perpetrated by misstatements and omissions made by defendant in all of the public statements made regarding the McFarlane Oil deal. Plaintiff is not putting defendant in a position of having to guess which of its statements are alleged to

be untrue, as plaintiff clearly focuses on defendant's statements regarding the value of McFarlane Oil and the value of the Global corporation at the particular point in time. Plaintiff alleges further that defendant knew these statements to be untrue and that they were made with the purpose of perpetuating the control of the incumbent board of directors, thus constituting a fraud on the shareholders. Plaintiff's belief that a fraud was perpetuated clearly is based upon information that became public during the course of the prior lawsuit filed against Global by one of the Requisitionists. We do not believe that the rule requires plaintiff to try his case at this stage, as much of the evidence necessary for plaintiff to prevail in this lawsuit may be obtained by him only through discovery. We find, therefore, that the complaint is sufficient to give defendant notice of the claims against it and complies with the requirements of Fed.R.Civ.P. 9(b). *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Defendant also asserts that this Court lacks personal jurisdiction and proper venue over the defendant.[8] Section 27 of the Act gives to the district courts jurisdiction over any corporate defendant "in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa. Personal jurisdiction under this section extends to the full reach permitted by the due process clause of the United States Constitution. Thus, jurisdiction can be obtained over any defendant who has minimum contacts with the forum such that maintenance of a suit in that district does not offend traditional notions of fair play and substantial justice. *Securities and Exchange Commission v. Gilbert*, 82 F.R.D. 723 (D.C.N.Y.1979).

We find that defendant has the minimum contacts necessary for this Court to exercise its jurisdiction in this case. Not only did defendant solicit proxy votes by letter and by advertisement in this district, shares of defendant's stock are bought and sold in this district, from which defendant derives substantial revenue. The alleged fraud in this case was perpetrated almost entirely through the use of the mails and the advertisements in national newspapers. We do not think it is unfair or offends the notions of substantial justice to require defendant to appear in this jurisdiction to answer the charges against it.

Defendant's last claim is that the service of process made upon defendant was insufficient and accordingly should be quashed.[9] Defendant asserts that service of process was made on a subsidiary company of Global located in Summit, New Jersey and that no service was made upon any of the officers or agents of Global who are located in the United States or on the principle place of business of Global located in the Channel Islands.

Whether or not the office of Global, Inc. located in Summit, New Jersey was designated by Global as an agent for the purpose of receiving service of process, we find that Global is estopped from asserting that service was not properly made. In a notice sent to shareholders regarding the annual general meeting, shareholders were directed to contact the company financial advisors or its information agent as set forth in the document. The document then listed these various entities in the locations at which they could be found. Under the heading Global Natural Resources PLC," is listed the Summit, New Jersey address. We find from this that defendant in fact designated Global, Inc., located at that address in Summit, New Jersey, as its agent for purposes of providing information in answering questions to Global PLC shareholders. Global shareholders would likely be misled that Global, Inc. was a local office of Global PLC. Further, plaintiff asserts that an attempt has been made to serve defendant at

---

**8.** This same issue was raised in the prior litigation and we ruled that this Court has jurisdiction over the same defendant under Section 27 of the Act, 15 U.S.C. § 78aa.

**9.** Defendant also argued separately that this Court had no independent jurisdiction over the state law claim. We need not address this issue because this Court has already ruled, *supra*, that we have pendent jurisdiction.

its Channel Islands office and no return has yet been received. Regardless, it is clear that defendant in fact was served with notice of this lawsuit and any deficiency in the service of process may be cured at this stage without prejudice to the defendant.

For the reasons set forth above it is hereby ORDERED that defendant's motion to dismiss and/or for summary judgment is denied.

SO ORDERED.