**John R. LISKEY, Plaintiff-Appellee, Cross-Appellant,**

v.

**OPPENHEIMER & CO., INC., and Warren K. Hayes, Defendants-Appellants, Cross-Appellees.**

Nos. 82–1118, 82–1159.

United States Court of Appeals, Sixth Circuit.

Sept. 21, 1983.

Thomas G. Parachini, Brown, Colman & DeMent, Kalamazoo, Mich., James E. Beckley (argued), Mary E. Keefe, J. David Montague, Chicago, Ill., for defendants-appellants, cross-appellee.

Gary P. Schenk, Ward, Schenk & Boncher, William P. Hodgkins, Jr., Grand Rapids, Mich., John R. Liskey (argued), Lansing, Mich., for plaintiff-appellee, cross-appellant.

Before MERRITT and MARTIN, Circuit Judges, and PORTER, Senior District Judge.*

DAVID S. PORTER, Senior District Judge.

This "churning" case presents the problem of what a court should do where arbi-

---

* Honorable David S. Porter, Senior Judge, United States District Court for the Southern District of Ohio, sitting by designation.

trable claims are joined with non-arbitrable claims. The district court denied defendants' motion to sever Counts III through VIII of plaintiff's complaint, which allege violations of stock exchange and association rules as well as state and common law, and compel arbitration of those claims following judicial resolution of Counts I and II of plaintiff's complaint, which allege violations of the federal securities laws. Defendants now appeal that portion of the district court's order. This court has jurisdiction over the appeal under 28 U.S.C. § 1292(a)(1) (1976) as an interlocutory decision refusing an injunction. *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1022 (6th Cir.1979).

The district court, in the same order, granted defendants' motions to dismiss Count III and part of Count VII of the complaint for failure to state claims upon which relief could be granted. Plaintiff filed a notice of cross-appeal from that portion of the district court's order. Plaintiff asserts that pendent jurisdiction exists for the cross-appeal.

## I. THE APPEAL

Plaintiff-appellee, John R. Liskey, ("Liskey"), opened several types of accounts with defendant Oppenheimer & Co., Inc. ("Oppenheimer") in late October 1976. Defendants-appellants maintain that at the time Liskey opened the accounts, he signed a "Consent to Loan of Securities" common-

ly referred to as a "margin agreement,"[1] and a "Client's Option Agreement."[2] These documents provide that all disputes relating to the management of a client's account shall be settled by arbitration.

Liskey alleges that defendant-appellant Hayes, one of Oppenheimer's brokers, induced him to invest over $100,000 in a bond-option program by giving him specific assurances of the low-risk nature of the investment. Within a year, Liskey's account was worth approximately $30,000. Liskey then filed an eight-count complaint, seeking to recover the amount he lost plus exemplary damages.

Counts I and II of Liskey's complaint allege violations of various provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1976). Appellants concede that these claims are non-arbitrable, despite the existence of the agreements to arbitrate, because of the well-recognized exception to the rule established by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1976). ("Arbitration Act"), providing for the exclusive jurisdiction of the federal courts over federal securities claims. *See e.g., Wilko v. Swan,* 346 U.S. 427, 438, 74 S.Ct. 182, 188, 98 L.Ed. 168 (1953); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1030 (6th Cir.1979); *Sibley v. Tandy Corp.,* 543 F.2d 540, 543 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Greater Continental Corp. v.*

---

1. Paragraph 16 of the margin agreement provides: "Any controversy between you and the undersigned arising out of or relating to this Agreement, or the breach thereof, or arising out of transactions with you shall be settled by either the National Association of Securities Dealers, Inc. or of the New York Stock Exchange, as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after receipt of notification from you requesting such election, then you may make such election. Any arbitration hereunder shall be before at least three arbitrators, and the award of the arbitrators or a majority of them shall be final, and the judgment upon the award rendered may be entered in any court having jurisdiction. I agree that notice of, and in any such arbitration may be sent to me by mail, and waive personal service thereof."

2. Paragraph 6 of the client option agreement provides:
"... Any controversy arising out of or relating to the account of the undersigned, to transactions with you for the undersigned or to this Agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. or the Board of Governors of the New York Stock Exchange or the American Stock Exchange as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five days after demand by you that the undersigned make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof."

*Schechter,* 422 F.2d 1100, 1103 (2d Cir.1970). Nevertheless, appellants maintain that Counts III through VIII, which allege claims that are pendent to the first two federal claims, should be severed and arbitrated following adjudication of the federal claims.

The district court recognized that,

[a]rbitration clauses like the ones involved in this case are generally valid, irrevocable and enforceable. 9 U.S.C. § 2 (1976).[3] The plaintiff has not disputed that he signed the agreements which contain arbitration clauses, *see, e.g.,* Complaint ¶ 49, nor has he alleged a valid defense to the enforcement of the clause. *See* 9 U.S.C. § 2 (1976). The sole basis for his objection to arbitration is that this court will resolve federal counts which necessarily affect the disposition of the pendent state claims. The issue, therefore, becomes whether the existence of the federal securities claims should preclude arbitration of the non-federal causes of action.

*Liskey v. Oppenheimer & Co., Inc.,* No. 79–672 (W.D.Mich. Jan. 12, 1982).

The district court followed the directive of this court's decision in *Mansbach, supra,* which provides:[4]

If the district court determines that . . . the federal claims contain substantially the same elements as the state law claims, so that resolution of the federal claims will necessarily resolve the state claims, then the court should consolidate the federal and state claims . . . and not refer such counts to arbitration.

In the alternative, if the federal and state claims are deemed not similar enough for such consolidation . . . then the district court should proceed only on the federal claims and stay all proceedings on the state claims pending resolution of the federal claims. If . . . [plaintiff] is unsuccessful on the federal claims, the district court should then refer the state claims to arbitration.

598 F.2d at 1030–31 (footnotes omitted). This court in *Mansbach* also stated that differences in jurisdictional elements and scienter requirements "should be regarded as insubstantial." 598 F.2d at 1031 n. 15.

In following this standard, the court below noted that "the plaintiff allegedly has suffered a single wrong and has asserted alternative theories of recovery." It found that in ruling on the federal securities counts (regarding "churning"), "the court will reach factual conclusions necessary to the disposition of the pendent state claims." The court concluded on that basis that *Mansbach* did not require severance and arbitration.

Appellants argue that the plain meaning of the Federal Arbitration Act as well as the strong federal policy favoring enforcement of arbitration agreements require that plaintiff's claims be arbitrated pursuant to the agreements between the parties. They suggest either that the district court's reliance upon *Mansbach* was misplaced[5] or that this court consider more fully enunciating the *Mansbach* directive in light of *Dickinson v. Heinold Securities, Inc.,* 661 F.2d

---

**3.** 9 U.S.C. § 2 provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

**4.** In *Mansbach,* this court held that the district court erred in dismissing the federal securities

claims. This court therefore offered a standard to the court below to follow in determining whether or not to consolidate the pendent state claims rather than refer them to arbitration.

**5.** Appellants contend that "[e]ven following *Mansbach, supra,* the District Court should have no difficulty in severing Counts I and II from III through VIII . . . . Counts III through VIII of Plaintiff's complaint set out and identified separate causes of action which if merged, whether by design or happenstance are merged with the securities law counts by underlying facts not 'the same elements.' *Mansbach, supra,* at 1030." Brief of Defendants-Appellants at 14.

638 (7th Cir.1981). Brief of Defendants-Appellants at 5–6.

In *Dickinson,* the plaintiff, upon opening an account with the defendant brokerage company, signed an options agreement containing an arbitration clause. The plaintiff filed an action alleging violations of the Securities Exchange Act of 1934 and various rules promulgated thereunder, as well as contract and state tort claims "based upon essentially the same facts relevant to the federal claim." 661 F.2d at 640.

The plaintiff in *Dickinson,* like plaintiff-appellee here, maintained that there was "no duty to arbitrate under the contract given the need for a judicial resolution of Count I [federal securities claim] and the substantial duplication of proof required as between Count I and the arbitrable counts." 661 F.2d at 642. The magistrate and the district court apparently agreed with plaintiff's position. The district court, in accordance with the magistrate's recommendation, retained the arbitrable claims for a judicial resolution together with the federal securities claim. The defendant appealed from the denial of its motion to compel arbitration of the state claims, and to stay arbitration pending judicial resolution of the non-arbitrable federal claim. 661 F.2d at 641. On appeal, the Seventh Circuit spurned plaintiff's so-called "efficiency argument," stating "[a] requirement to arbitrate may, in a particular instance, result in

some duplication of effort, but this prospect cannot vitiate the agreement of the parties." 661 F.2d at 643.

■ The *Dickinson* court notes that the plaintiff's argument derives "from the 'doctrine of intertwining' as primarily enunciated in a line of Fifth Circuit cases. *Miley v. Oppenheimer & Co.,* 637 F.2d 318, 334–37 (5th Cir.1981); *Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977)" (parallel citations omitted).[6] This doctrine is a judicially-created exception to the application of the Arbitration Act which instructs that when arbitrable and non-arbitrable claims are sufficiently intertwined factually and legally, a court should deny arbitration of the arbitrable claims and try all the claims together in federal court. *See Dickinson,* 661 F.2d at 643; *Miley,* 637 F.2d at 335;[7] *Cunningham v. Dean Witter Reynolds, Inc.,* 550 F.Supp. 578, 581 (E.D. Cal.1982). The *Dickinson* court observes that two reasons have been advanced to justify this judicially-created exception: preservation of exclusive jurisdiction over the non-arbitrable claim; and efficiency. 661 F.2d at 633–64.

In examining the first proffered rationale, the Seventh Circuit notes that the threat to the jurisdiction of the federal courts over non-arbitrable claims arises only

---

**6.** The *Dickinson* court, in a footnote, mentions *Mansbach, supra,* as one of the decisions apparently endorsing the Fifth Circuit's "intertwining" approach, but states that it does not "analyze the issue in sufficient depth ... to merit discussion here." 661 F.2d at 643 n. 10.

**7.** We note, however, that *Miley* did not decide the precise issue we have here; *i.e.,* whether to sever the arbitrable claims but stay arbitration pending judicial resolution of the federal claims. The *Miley* court noted that the defendant in that case "never moved in the district court to have the pendent state claims severed and to stay the arbitration pending the completion of the federal trial. Rather, Oppenheimer (defendant) moved only to dismiss the federal claim or, alternatively to stay the federal trial until completion of the arbitration." 636 F.2d at 336 n. 15. There is also *dicta* in the *Miley* case which tend to support appellant's position:

> Oppenheimer has raised on appeal one possible scenario which would preserve the exclusive federal jurisdiction by allowing the federal trial to proceed while the arbitration of the state claim was stayed. Their contention is not without merit; and indeed, there is a *strong argument in favor of requiring the judge in a churning case, upon the motion of either party, to instruct the jury that if they do not find a violation of the federal securities laws, they should not reach the issue of whether a breach of fiduciary duty was committed. In such cases, the parties have a right, if they so desire, to have an arbitrator decide whether there was sufficient misconduct to violate the fiduciary duty standard, even though the misconduct did not constitute "willful and reckless excessive trading of an account designed to generate fees."*
>
> *Id.* at 336 (footnote omitted).

when arbitration of an "intertwined" state claim *precedes* the federal proceeding, so that "the federal forum might find itself bound through collateral estoppel." . 661 F.2d at 644. Nevertheless, the court dismisses this rationale as justification for denying arbitration of otherwise arbitrable claims. 661 F.2d at 644, *citing Lee v. Ply* * *Gem Industries, Inc.,* 593 F.2d 1266, 1275 (D.C.Cir.), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) ("intertwining" or "permeation" doctrine provides "no authority for the ruling ... that arbitrable claims become subject to adjudication in court merely because they are related to non-arbitrable claims"). The *Dickinson* court resolves the problem as follows:

> Where the non-arbitrable issues substantially permeate the entire case and make it difficult to separate out the arbitrable issues, the district court has discretion to *stay* arbitration pending a judicial resolution of the non-arbitrable claims. [Citations omitted]. By controlling the order of the two adjudications, a procedure certainly within the power of the district court, [citations omitted] the district court can preserve its full authority to decide non-arbitrable issues without any collateral estoppel consequences from a prior arbitration.

661 F.2d at 644 (emphasis in original).

As to the efficiency rationale for the "intertwining" exception to the application of the Arbitration Act, the *Dickinson* court acknowledges that "[i]f arbitration is stayed pending the judicial resolution of intertwined securities claims, plaintiffs will be required to duplicate some portion of their efforts in order to pursue their arbitrable claims." 661 F.2d at 644. Some duplication notwithstanding, the court concludes that it is not sufficient "to destroy the right to arbitration." *Id.* The court discounts the alleged inefficiency of bifurcated proceedings by noting that detailed findings of fact in a bench trial, or a special verdict in a jury trial, would obviate much of the duplication of proofs "through the impact of collateral estoppel on the subsequent arbitration." *Id.* It also speculates that plaintiffs who prevail on their federal claims

may have no need to arbitrate because they will have already recovered their damages, or plaintiffs may settle their arbitrable claims based upon the facts developed in the federal proceedings. *Id.*

The *Dickinson* court rejects the plaintiff's position calling for an *ad hoc* approach based upon the degree of intertwining. It recognizes that under *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), an arbitrable state law claim is only pendent to the federal securities claim for jurisdictional purposes, if the evidentiary facts underlying the claims are "derived from a common nucleus of operative fact." Thus, the court reasons, "the intertwining doctrine would always threaten to become the exception that swallowed the rule, allowing the presence of a non-arbitrable claim to force a trial on the otherwise arbitrable claims." 661 F.2d at 645–46.

Finally, the Seventh Circuit points out that emphasis on efficiency elevates one purpose of the Arbitration Act "over the important goal of allowing technical disputes to be resolved by arbitrators with special expertise in the relevant area." 661 F.2d at 646. The *Dickinson* court concludes that bifurcated proceedings are the only "viable alternative" under the present securities and arbitration acts, as "the Arbitration Act requires that we enforce the bargain of the parties as to dispute resolution and not substitute our own views of economy and efficiency." *Id.*

Appellants in the instant case ask us to adopt the *Dickinson* rule and sever Counts III through VIII, and compel their arbitration following judicial resolution of Counts I and II. Appellants maintain that this solution strikes the proper balance between the federal policy favoring enforcement of agreements to arbitrate and the competing federal policy allowing plaintiffs the right to litigate federal securities claims in federal court. They argue that plaintiff will have his opportunity to try his securities claims in a judicial forum, and the parties will have the benefit of their bargain to

arbitrate preserved. *See* Brief of Defendants-Appellants at 19.

The *Dickinson* rule, however, has not met with resounding praise in all corners. The United States District Court for the Eastern District of California, for example, recently rejected the *Dickinson* solution in *Cunningham v. Dean Witter Reynolds, Inc.,* 550 F.Supp. 578 (E.D.Cal.1982). The *Cunningham* court states:

> While the *Dickinson* court fairly criticizes the Fifth Circuit for failing fully to articulate the statutory basis for the discretionary authority asserted in *Sibley* and *Miley* [which espoused the "intertwining" doctrine], it appears that the Seventh Circuit is vulnerable to similar criticism. Based on a series of accurate, but quite general, statements regarding the strong federal policy favoring arbitration and the purposes of the Arbitration Act, the Seventh Circuit reaches the conclusion that the Arbitration Act forbids the court to hear arbitrable claims in the context of a mixed claims case. In this regard, I am not at all satisfied that either the Fifth or Seventh Circuit has looked closely enough to the Arbitration Act itself . . . .

550 F.Supp. at 582–83.

The *Cunningham* court concludes that neither the language of Section 3 of the Arbitration Act, 9 U.S.C. § 3,[8] nor an examination of the purpose stated for enacting the Arbitration Act justify adoption of the *Dickinson* rule. *Id.* at 583. The court notes that Section 3 of the Arbitration Act does not discuss bifurcation at all. The court further notes that "[t]he problem Congress intended to rectify [in enacting the Arbitration Act] was that essentially *no* arbitration agreements could be enforced in a court of law [theretofore] . . . ." 550 F.Supp. at 583 (emphasis in original).

The *Cunningham* court then reasons:

The policy Congress intended to effectuate in this manner was to avoid the unnecessary expense and delay of litigation where parties had provided for the more efficient process of arbitration . . . . The *Dickinson* solution to a suit involving non-arbitrable federal securities claims and pendent claims renders effectuation of the expressed Congressional policy of saving time more difficult.

*Id.* at 584. According to the *Cunningham* court, this is because bifurcation would likely entail two hearings "on the same evidentiary facts and deliberation upon essentially the same factual and legal problems." *Id.* (footnote omitted).

The *Cunningham* court further criticizes the *Dickinson* solution of federal proceedings followed by arbitration on the ground that it "would effectively preempt any application of expertise by the arbitrator," *id.* at 585, as any technical issues in the case would most likely arise at trial. The *Dickinson* court, however, anticipated this criticism, noting:

> Admittedly, an initial judicial resolution of plaintiff's federal security law claim in Count I might, depending on the basis of its resolution, effectively decide those very questions best suited for the arbitrator's expertise. At the same time, it is possible to resolve Count I in several ways that would leave substantial matters for the arbitrators. At this point, however, whatever the interaction of the resolution of the claims, we are not able to overlook the important purpose of the agreement to provide arbitration by experts.

*Dickinson,* 661 F.2d at 646 n. 19. The *Dickinson* court found the goal of allowing technical disputes to be resolved by arbitrators with special expertise in the relevant area to be "particularly important . . . where the arbitrable claims will require an

---

**8.** 9 U.S.C. § 3 provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

assessment, *inter alia,* whether . . . [defendant's] pattern of trading, in light of constantly changing conditions in the options market, complied with the strategy restrictions embodied in plaintiff's contract." 661 F.2d at 646. This consideration is equally apposite in the case before us.

After careful consideration of the thoughtful criticisms of the *Dickinson* rule by the *Cunningham* court, we conclude that the *Dickinson* rule strikes the proper balance between the competing policies in the Arbitration Act and the Securities Exchange Act of 1934. The *Cunningham* court concludes that the plain language of section 3 of the Arbitration Act, 9 U.S.C. § 3 (1976), "[i]f any suit be brought . . . upon any issue referable to arbitration . . . , the court . . . shall . . . stay the trial of the action until such arbitration has been had . . . ," "appears to refer to suits upon solely arbitrable issues." 550 F.Supp. at 583. In other words, the *Cunningham* court concludes that the Arbitration Act does not apply to actions involving mixed claims. We do not find this conclusion inevitable. This section of the Act may also be read to mean that, in any case, the court should stay trial of any arbitrable issues and refer them to arbitration.

The *Cunningham* court concedes that "Congress did not specifically address the issue" before us, *i.e.,* what a court should do when confronted with a case involving both arbitrable and non-arbitrable claims. 550 F.Supp. at 583. Thus, it turns to an examination of the policy goals underlying the Arbitration Act. As discussed above, it concludes that Congress intended "to avoid the unnecessary expense and delay of litigation where parties had provided for the more efficient process of arbitration." *Id.* at 584. We agree with the *Dickinson* court that much of the alleged inefficiency inherent in bifurcated proceedings is speculative and that much of the duplication of proofs may be avoided.

Appellants contend that "an additional benefit" of the *Dickinson* rule "is that arbitration of the non-federal claims will expedite the resolution of the issues before the trial court." The court will only face two counts requiring the same burden of proof, instead of eight requiring different levels of proof and different cautionary instructions. Brief of Defendants-Appellants at 19.

██ Thus, even assuming that severance of the arbitrable claims in this case will necessitate some duplication of proofs, we conclude that the agreement of the parties to arbitrate disputes arising out of or relating to plaintiff-appellee's accounts with defendant-appellant Oppenheimer should be enforced as to Counts III through VIII of the complaint. We believe that the Supreme Court's latest pronouncement concerning the enforcement of contractual arbitration provisions in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), while not directly on point, supports our conclusion.

The *Cone Memorial Hospital* case involved a suit to compel arbitration of a contractual dispute under the federal Arbitration Act. The defendant opposed arbitration on the ground that only one of the two other parties involved in the dispute was bound by the contract providing for arbitration. Thus, the defendant faced the prospect of having to resolve the dispute in two different forums. Nevertheless, the Court noted that such an outcome could occur "because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Id.* at ——, 103 S.Ct. at 939 (emphasis in original). We believe that this statement implies that the Supreme Court would reject the *Mansbach* directive that the district court consolidate non-arbitrable federal and arbitrable state claims and not direct arbitration of the latter.[8a]

---

**8a.** Our decision not to follow the analysis suggested in *Mansbach* does not constitute a departure from this court's practice of not allowing one panel to overrule another panel's holding in a previous case. Unlike the *Dickinson*

court and this panel, the *Mansbach* panel was not directly presented with the question of the severability of arbitrable claims. Accordingly, we do not disturb the holding of that case.

We, therefore, reverse the order of the district court denying the defendants' motion to sever, stay, compel and stay arbitration, and remand for proceedings consistent with this opinion.[9]

## II. THE CROSS–APPEAL

Plaintiff-appellee asserts that pendent jurisdiction exists for his cross-appeal from the district court's dismissal of Count III and part of Count VII of his complaint. He argues:

> This Court possesses the jurisdictional power as a result of Defendants' appeal of an interlocutory order under 28 U.S.C. § 1292(a)(1) 'to reach and decide other aspects of the order which would not be independently reviewable by interlocutory appeal.' *Curran v. Merrill Lynch, Pierce, Fenner & Smith,* 622 F.2d 216, 230 n. 17 (6th Cir.1980) . . . . Plaintiff's theories underlying Counts III and VII of the Complaint are inextricably bound up in the order appealed from by Defendants, and should be considered by the Court of Appeals in its review of that order.

Brief of Plaintiff-Appellee at 2. Defendants-appellants moved this court to dismiss the cross-appeal for lack of jurisdiction.

The district court dismissed Count III, which alleges that defendants violated certain requirements of the National Association of Securities Dealers (NASD) Rules of Fair Practice, and the New York Stock Exchange (NYSE) rules, on the ground that there is no implied private right of action under those rules. It dismissed part of Count VII, which alleges that the bond-option program was a security which should have been registered under the Michigan Uniform Securities Act, on the ground that it does not fit within the Sixth Circuit's definition of a "security" which must be registered. We find that dismissal of these counts is in no way inextricably bound up with defendants' interlocutory appeal, under 28 U.S.C. § 1292(a)(1), on the arbitration issue. Furthermore, the district court did not certify its decision as to these claims as a final judgment under Rule 54(b), Fed. R.Civ.P. 54(b).

■ While we agree with plaintiff that this court has the *power* to exercise pendent jurisdiction over questions going beyond the obvious limits authorized by the appeal before us, we believe the exercise of the power is a matter within our discretion. *See* 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure* § 3937 (1977). Professors Wright and Miller counsel "that the power should be sparingly and rarely exercised." *Id.* at 271. As the issues raised by the cross-appeal are not related to the issue on appeal, we dismiss the cross-appeal for lack of jurisdiction.

Accordingly, the case is reversed and remanded to the district court.

---

**9.** Judge Hillman's opinion for the court in *First Heritage Corp. v. Prescott, Ball & Turben,* 710 F.2d 1205 (6th Cir.1983), affirming the district court's denial without prejudice of a stay pending arbitration in a mixed claims securities action is distinguishable from this case. In that case, both the plaintiff and the defendant are members of the National Association of Securities Dealers (NASD), and as such are obligated to arbitrate investment disputes pursuant to the NASD's Code of Arbitration Procedure. After a hearing, the district judge denied the motion to stay proceedings pending arbitration without prejudice, indicating that the factual record before him was inadequate to properly balance the competing policies in the Arbitration Act and the 1934 Act. Judge Hillman concluded that whether arbitration should be compelled depends in part upon the public interest in the dispute, and thus the degree to which the judicial forum is preferable to arbitration. This court therefore held that the district judge was correct in holding that balancing the conflicting policies required a more complete record of the factual background of the action. In contrast, in this case, both parties are not members of a self-regulatory organization, and there is no contention that an exception to the Securities Exchange Act of 1934, where the parties are both members of a self-regulatory organization, applies here.