**M.A. SHAPIRO, et al., Plaintiffs,**

**v.**

**MERRILL LYNCH & CO., et al., Defendants.**

Civ. A. No. C–1–85–0625.

United States District Court,
S.D. Ohio, W.D.

Feb. 25, 1986.

Gene Mesh, Michael Kohn, Cincinnati, Ohio, for plaintiffs.

Mark A. VanderLaan, Cincinnati, Ohio, for defendants.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge.

This is a class action by purchasers of Baldwin-United Corporation's common and preferred stock, its 10% Subordinated Debentures Due 2009, and D.H. Baldwin's Debentures Due 1994, against Merrill Lynch & Co., Inc. (ML & Co.) and Merrill Lynch, Pierce, Fenner & Smith, Inc. (MLPFS) (hereinafter collective Merrill Lynch). Plaintiff alleges that Merrill Lynch violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j *et seq.* (1981) and Securities and Exchange Commission Rule 10b–5 by using deceptive practices and making false and misleading statements and omissions about Baldwin which affected the market price of Baldwin-United stock. Plaintiff contends that through its business transactions with Baldwin-United Merrill Lynch had actual knowledge or recklessly disregarded the truth regarding Baldwin-United's deteriorating financial condition.

This case is now before this Court on Merrill Lynch's motion to compel arbitration, or to dismiss or transfer this action (doc. 10). Plaintiff has filed his memorandum in opposition (doc. 14) and defendant has replied (doc. 18). We will deal first with the motion to transfer, followed by the arbitration issue and the motion to dismiss.

## I. *Motion to Transfer*

Defendant Merrill Lynch seeks to have this case transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that a district court may, in its discretion, transfer a case for the convenience of parties and witnesses, in the interest of justice. The purpose of this provision is to avoid unnecessary inconvenience and expense by preventing duplicate trials and to give the defendant some voice in the choice of forum. *See* 1 Fed.Proc.L.Ed. § 1:745 (1981). Although this section is derived from the common law doctrine of *forum non conveniens,* it is well settled that a lesser showing of inconvenience is required under the statute. *See e.g., Northern Indiana Public Service Co. v. Envirotech Corp.,* 566 F.Supp. 362 (N.D.Ind.1983); *Lake v. Richardson-Merrell, Inc.,* 538 F.Supp. 262 (N.D.Oh.1982). Nonetheless, the relevant factors considered by a court in applying the common law rule are still relevant under the statute. Among those factors, the ones which are germane here include (1) the plaintiff's choice of forum, (2) the relative ease of access to sources of proof, (3) the nature, materiality and essentiality of testimony to be elicited from witnesses who must be transported, (4) the plaintiff's residence, (5) pendency of a substantially similar action in the transferor or transferee court, which may beneficially be consolidated with the case in question, (6) the respective courts' familiarity with applicable law and condition of their dockets, (7) the place of events in suit, and (8) the nature of the suit. After applying these criteria to the facts in this case, we conclude that a transfer to the Southern District of New York is not warranted, and that defendant's motion is therefore denied.

The plaintiff's choice of forum is traditionally regarded as a significant factor which should not lightly be set aside. Nonetheless, the weight accorded to the plaintiff's choice of forum is reduced where the plaintiff does not reside in the forum. *New Image, Inc. v. Travelers Indemnity Co.,* 536 F.Supp. 58 (E.D.Pa.1981). Moreover, if a case is brought as a class action, factors other than plaintiff's choice must necessarily take on increased significance. *Donnelly v. Klosters Rederi A/S,* 515 F.Supp. 5 (E.D.Pa.1981). Therefore, we will not regard plaintiffs' choice in this case as controlling, but we will consider it with some deference and in light of the other factors as listed above. Thus, as we have said previously, the burden of showing the desirability of transfer is on the moving party. *Murphy v. Allen County Claims & Adjustments, Inc.,* 550 F.Supp. 128, 133

(S.D. Ohio 1982). This remains true even when the plaintiff does not reside in the transferor district.

■ Defendant emphasizes the inconvenience and expense it will suffer if this case continues in this forum. The principal officers of defendant are in the Southern District of New York, as are their investment banking and securities research officers. Therefore, a number of defendant's employees who are prospective witnesses would have to interrupt their normal business activities in order to come to this district to testify should this case go to trial. Defendant does not, however, indicate the specific number of witnesses that would be inconvenienced, nor the nature, materiality or essentiality of the testimony that these New York employees would provide. The mere fact that some witnesses from the proposed transferee district may be called is, by itself, inadequate to warrant a transfer where it is not shown that they would be severely inconvenienced or that they are indeed key witnesses. *Weltman v. Fletcher*, 431 F.Supp. 448 (N.D. Ohio 1976).

■ Plaintiff also claims that there are many Ohio witnesses who will be needed to testify at trial. Although plaintiff also fails to specify the nature, materiality, or essentiality of the testimony from those witnesses, it seems evident that both parties will want to call non-forum witnesses regardless of where any trial in this case ultimately takes place. Thus, we conclude that defendant has not adequately shown that the inconvenience to it of remaining in this forum outweighs the inconvenience to plaintiff, should the case be transferred to New York.

■ Defendant also states that most, if not all, of the defendant's documents relevant to the action are in New York. The location of documentary evidence may be a factor in determining whether a case should be transferred, but it is not enough simply to assert that transfer is necessary because relevant documents are at the defendant's main office in the proposed trans-

feree district. Rather, defendant needs to demonstrate that a large volume of documentary evidence must be transported, *Richards v. Upjohn Co.*, 406 F.Supp. 405 (E.D.Mich.1976), and that it is not possible to reduce the volume through other discovery techniques. In this case there has been no showing by defendant as to the necessity of transporting a large volume of documents nor that the volume cannot somehow be consolidated through other devices.

■ Defendant also has emphasized that plaintiff is not a resident of this district while defendant has its main offices in the proposed transferee district. Although we acknowledge that this is of some significance, it is also true that defendant carries on a nation-wide business. Generally a defendant that does business nation-wide may not obtain a transfer to the district where its main office is solely for that reason. By undertaking a nation-wide business, a corporation assumes the risk of amenability to suit throughout the nation. *Samson Cordage Works v. Wellington Puritan Mills, Inc.*, 303 F.Supp. 155 (D.C.R.I.1969). Defendant MLPFS, a subsidiary of ML & Co., does operate offices in the Southern District of Ohio and conducts business here. Moreover, defendant's activities in this district are pertinent to this case because plaintiff alleges that "relevant transactions between defendants and Baldwin-United took place in Ohio" (doc. 14 at 70). Thus, even if defendant's main offices and relevant actions are based elsewhere, some transactions which may be critical to this case allegedly took place in this district.

Finally, defendant states that the pendency of actions similar to this one in the proposed transferee district, as well as that court's familiarity with the applicable laws, lends additional support to their request for a transfer. One of those similar actions, *Rowther v. Merrill Lynch, Inc.*, 85 Civ. 3146 (CIB), (S.D.N.Y., filed April 24, 1985) has now been dismissed without prejudice in the Southern District of New York. That case has been refiled in this district and it is now on the calendar of this Court.

*Rowther v. Merrill Lynch, Inc.*, C-1-86-0026, (filed Jan. 10, 1986, S.D. Ohio).

Defendant contends, however, that the presence of the *Rowther* case in this district does not moot the question about the transfer of *Shapiro*. They contend that the primary reason Rowther sought transfer to Ohio was not for ultimate consolidation with this action, but rather because at the time the change of venue was sought, an action was pending in this Court by Baldwin-United against Merrill Lynch. That case, *Baldwin-United Corp. v. Merrill Lynch & Co., Inc.*, No. C-1-85-1579 (S.D. Ohio filed September 25, 1985) has since been dismissed with prejudice.

Defendant also points out that at the December 16, 1985 hearing on the dismissal of the *Rowther* case in New York, Rowther's counsel specifically agreed to be bound by this Court's decisions in *Shapiro*, including our decision about transferring *Shapiro* to New York. Thus, they argue that the mere fact that *Rowther* is also now before this Court does not necessarily moot the question of whether *Shapiro* should be transferred to New York (along with *Rowther*). Nonetheless, the fact that *Rowther* is no longer pending in New York does undercut one of defendant's original arguments in favor of transfer because consolidation of the two actions can now be accomplished without further transfers.

The fact that other related actions are consolidated before this Court in *MDL 606 (In re D.H. Baldwin Debentures Due 1994 Securities Litigation)* offers an additional reason for not transferring this action again. It is undeniable that the District Court in the Southern District of New York has great expertise with law applicable in this case due to its handling of *MDL 581 (In re Baldwin-United Single Premium Deferred Annuities Insurance Litigation)* and other securities litigation, but this Court is also familiar with relevant law.

In summary, there appears to be a rather even "balance of inconvenience" between this forum and the proposed transferee district. Since defendant has not persuaded us that the interest of justice would be better served by a transfer, we are inclined to defer to plaintiff's choice of forum and to deny defendants' motion for transfer.

## II. *Motion To Compel Arbitration*

Merrill Lynch contends that plaintiff's claim should be arbitrated under the terms of the customer and option agreements plaintiff executed with Merrill Lynch. The customer agreement signed by plaintiff on approximately July 27, 1981 contained an arbitration clause, as follows:

It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. and pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. as the Undersigned may elect.

In addition, plaintiff signed an option agreement on approximately August 11, 1982 which also contained an arbitration clause, as follows:

Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or an Exchange located in the United States upon which listed options transactions are executed.

Merrill Lynch contends that these clauses extend to "any controversy" arising out of plaintiff's transactions with Merrill Lynch, and since the claims in this action involve plaintiff's purchases of securities through Merrill Lynch they are thus covered by the agreements.

Moreover, Merrill Lynch contends that these arbitration agreements are irrevocable and enforceable pursuant to section 2 of the Federal Arbitration Act, 9 U.S.C. § 2 which provides:

A ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the

refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Merrill Lynch thus seeks an order from the Court compelling plaintiff to arbitrate his claims, and a stay of court proceedings pending arbitration, pursuant to section 3 of the Arbitration Act, 9 U.S.C. § 3.

Plaintiff opposes Merrill Lynch's motion to compel arbitration because they contend that their claims which are asserted under section 10(b) of the Exchange Act and Rule 10b–5 are not arbitrable. Moreover, they argue that the arbitration clauses in defendant's form customer and option agreements are unenforceable contracts of adhesion. For the reasons set forth below, we conclude that plaintiff's claims under the Exchange Act and Rule 10b–5 are not arbitrable. We therefore do not need to reach the question of whether the arbitration clauses are unenforceable adhesion contracts in order to conclude that defendant's motion should be denied.

While it is clear that an agreement to arbitrate claims arising under the Securities Act of 1933 is invalid and unenforceable against an investor, *Wilko v. Swan*, 346 U.S. 427, 438, 74 S.Ct. 182, 188, 98 L.Ed. 168 (1953), the Supreme Court has not ruled on the validity of such an agreement regarding claims arising under the Exchange Act of 1934. In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), *reh'g denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129, the Court questioned whether the *Wilko* rule should be extended to claims arising under section 10(b) of the 1934 Act or under Rule 10b–5. The *Scherk* Court noted that there were significant differences between the 1933 Securities Act and the 1934 Exchange Act, including the fact that the 1934 Act did not expressly establish a special private right of action differing from the common law rule as the 1933 Act did.

Nonetheless, in *Scherk* the Court did not compel arbitration of an issue arising under the 1934 Act because of the differences between the two securities laws. Rather the Court found that there were "crucial differences" between the customer-broker agreement of *Wilko* and the bargained-for international sales agreement in *Scherk*. *Id.* at 515, 94 S.Ct. at 2455. The *Scherk* Court noted that an international contract for the sale of business enterprises between an American corporation and a German citizen that was negotiated in the United States, England, and Germany, signed in Austria, and closed in Switzerland, all with the assistance of legal experts from each country, involved policy considerations far different from those deemed controlling in *Wilko*. *Id.*

The Supreme Court itself has noted that the *Scherk* decision did not "hold that *Wilko* would not apply in the context of a § 10(b) or Rule 10b–5 claim." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1240 n. 1, 84 L.Ed.2d 158 (1985). As the Supreme Court further noted in *Byrd*, "*Wilko* has retained considerable vitality in the lower federal courts. Indeed, numerous district courts and court of appeals have held that the *Wilko* analysis applies to claims arising under § 10(b) ..., and that agreements to arbitrate said claims are therefore enforceable." *Id.* In fact, the Sixth Circuit Court of Appeals is among those courts which have determined that *Wilko's* "holding and rationale are equally applicable to cases arising under the Securities and Exchange Act of 1934." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1030 (6th Cir.1979).

Defendants contend that the Supreme Court decision in *Byrd* necessitates a rethinking of the applicability of *Wilko* to claims arising under the 1934 Act. In *Byrd* the Supreme Court adopted a position consistent with that already expressed by the Sixth Circuit in *Liskey v. Oppenheimer & Co.*, 717 F.2d 314 (6th Cir.1983). Specifically, the Supreme Court concluded that "the Arbitration Act requires district courts to compel arbitration of pendent ar-

bitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." 105 S.Ct. at 1241. The *Byrd* Court specifically declined to resolve the applicability of *Wilko* to § 10(b) and Rule 10b–5 claims because it was not properly before the Court. *Id.* 105 S.Ct. at 1240 n. 1. Nonetheless, defendant contends that Justice White's concurring opinion is significant because he stated that *"Wilko's* reasoning cannot be mechanically transplanted to the 1934 Act." *Id.* at 1244. After pointing out some of the differences between the two Acts, Justice White emphasized "that the question remains open and the contrary holdings of the lower Courts must be viewed with some doubt." *Id.*

We do not agree with defendant that Justice White's comments express the views of the Court nor that they undercut the authority of existing Sixth Circuit precedent such as *Mansbach* and, to some extent *Liskey,* in which it was apparently assumed that claims under the 1934 Act were not arbitrable. In light of other language in the unanimous *Byrd* opinion already quoted above, we do not read *Byrd* as discrediting those lower federal court decisions which have held *Wilko* applicable to claims under the 1934 Act.

■ This Court has already reviewed the continued vitality of *Mansbach* in light of *Byrd* and concluded that "[t]he present law of this Circuit is that the holding and rationale of *Wilko* are equally applicable to cases arising under the Act of 1934." *Sterne v. Dean Witter Reynolds, Inc.,* No. C–1–85–124, slip op. at 7–8 (S.D. Ohio Jan. 10, 1986). We concur with this conclusion notwithstanding the handful of contrary cases cited by Merrill Lynch. Where there are no arbitrable pendent state claims, as in this case, we find that plaintiff's federal securities claims under the Exchange Act of 1934 are not arbitrable. Consequently, Merrill Lynch's motion to compel arbitration of the claims is denied.

### III. *Motion to Dismiss*

Plaintiff's amended complaint has one count which charges that Merrill Lynch is liable for violating Section 10(b) of the 1934 Securities Exchange Act, and SEC Rule 10b–5 thereunder. Merrill Lynch contends that this count should be dismissed because it is legally insufficient. Defendant claims that plaintiff has failed to set forth the elements of his claim for alleged misrepresentations or omissions by Merrill Lynch with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Moreover, defendant argues that plaintiff has stated no claim at all if his security fraud charges are premised on a theory of "fraud on the market." Accordingly defendant urges us to dismiss plaintiff's amended complaint.

### A. *Standard of Review and Degree of Particularity Required*

In reviewing the sufficiency of plaintiff's complaint we must read the complaint as a whole, accepting the allegations in the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). The complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim" entitling him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Federal Rule of Civil Procedure 9(b) does require, however, that "the circumstances of fraud or mistake shall be stated with particularity." This requirement does not mean that the complaint must plead evidence. *Jordan v. Global Natural Resources, Inc.,* 564 F.Supp. 59, 69 (S.D. Ohio 1983). Rather, Rule 9(b) should be read together with Rule 8(a)(2) which requires that a pleading contain "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). A plaintiff cannot be expected to plead in great detail at the outset of a case, particularly in a case involving securities fraud because no discovery has yet taken place which would give him adequate information to provide great particularity. *See Christidis v. First Pennsylvania Mort-*

*gage Trust,* 717 F.2d, 96, 99–100 (3d Cir. 1983); *Merritt v. Libby, McNeill & Libby,* 510 F.Supp. 366, 373 (S.D.N.Y.1981).

In determining the degree of particularity required by Rule 9(b), we must bear in mind that one of its aims is to ensure that defendants are informed of the claims against them in sufficient detail so they are able to formulate a response, *Merritt v. Libby,* 510 F.Supp. at 373, and to ensure that there is some factual basis for the claims. *Husted v. Amrep Corp.,* 429 F.Supp. 298, 310 (S.D.N.Y.1977). Thus, if the defendant has fair notice of the charges against him, the Rule is satisfied. In the words of the Second Circuit, Rule 9(b) requires only "that the Complaint gives each defendant notice of precisely what he is charged with." *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985). For a Rule 10b–5 case, the Second Circuit found that a complaint was adequate because it "specified the statements it claimed were false or deceptively incomplete; it gave particulars as to the respect in which plaintiff contended the statements were fraudulent, it detailed the time and place at which the statements were made; and it identified the defendants charged with having made those statements." *Id.* at 1069–70. Defendants contend that plaintiff did not meet this level of particularity, but rather that he set forth "mere conclusory allegations" which have been found insufficient under Rule 9(b). *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir.1971).

### B. *Sufficiency of The "In Connection With" Allegations*

 Merrill Lynch contends that plaintiff has failed to specify any nexus between Merrill Lynch's alleged misrepresentation or omissions and plaintiff's purchase of Baldwin-United securities. Defendant argues that such allegations are required to establish that plaintiff's stock purchases were "in connection with" defendant's alleged misrepresentations and omission, as required by Rule 10b–5. *See Superintendent of Insurance v. Bankers Life & Casu-*

*alty Co.,* 404 U.S. 6, 10, 92 S.Ct. 165, 168, 30 L.Ed.2d 128 (1971). The Sixth Circuit also has held in *Marsh v. Armada Corp.,* 533 F.2d 978 (6th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977) that general allegations of misrepresentation made at some point prior to the purchases are insufficient because they do not necessarily indicate any connection between the statements and the transactions. Rather, "some discernible nexus between the allegedly fraudulent conduct and the purchase of securities is required." *Zuckerman v. Harnishfeger Corp.,* 591 F.Supp. 112, 121 (S.D.N.Y.1984).

The Supreme Court has stated that the "in connection with" requirement can be satisfied if plaintiff is injured "as a result of deceptive practices touching" the sale of securities. *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12–13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). In applying this Supreme Court language, the Sixth Circuit and other Circuits have deemed the "in connection with" requirement to be satisfied if the alleged fraud "touches" the purchase or sale of securities. *See, e.g., Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1028 (6th Cir.1979). In applying this "de minimis 'touch' test" to satisfy the "in connection with" requirement, the courts have only rarely dismissed cases for failure to satisfy the "in connection with requirement." *Id.,* quoting Note, *The Pendulum Swings Farther: The "In Connection With" Requirement and Pretrial Dismissals of Rule 10b–5 Private Claims for Damages,* 56 Tex.L.Rev. 62, 66 (1977).

Defendants cite the *Marsh* case for the proposition that Rule 10–b5's "in connection with" requirement can be satisfied only if purchases or sales of stock were made "soon after an allegedly fraudulent act occurred." 533 F.2d at 981. This statement was not made in the context of a discussion of how closely connected *in time* the alleged fraud and the purchase or sale of stock had to be. Rather, the court was discussing the fact that there had to be some purchase or sale, and not merely an assertion that "fraudulent activity

caused him [the plaintiff] not to buy stock . . . or to not sell stock." *Id.* Thus, we can find no Supreme Court or Sixth Circuit authority which requires a plaintiff to establish a close temporal connection between a specific fraudulent statement or omission and a specific purchase or sale of stock in order to survive a Rule 9(b) motion to dismiss.

In examining plaintiff's amended complaint, we find that they have alleged fraud with sufficient particularity to meet the "in connection with" requirement. Paragraphs 16 and 17 of plaintiff's amended complaint state that defendant failed to disclose adverse material information over a specific period of time. Paragraph 20 identifies several specific material misstatements. These material omissions and misstatements purportedly took place throughout the class period defined by plaintiff. Thus we conclude that they were sufficiently connected with the purchase or sale of Baldwin securities during that period to withstand defendant's motion.

C. *Sufficiency of Reliance Allegations*

█ In a Section 10(b) case plaintiff must also allege reliance or causation. This means that a plaintiff must assert that the defendant's alleged fraud caused plaintiff to engage in the transaction in question. *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). The usual test for reliance is whether the plaintiff would have acted differently than he did in purchasing or selling securities if the defendant had revealed to him the information which was allegedly omitted or misstated. *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith,* 495 F.2d 228, 239 (2d Cir.1974). In non-disclosure cases the reliance requirement has been held to be satisfied if plaintiff asserts that defendant omitted material facts which it had a duty to disclose. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 129, 92 S.Ct. 1456, 1459, 31 L.Ed.2d 741 (1972).

Defendant contends that plaintiff has failed to specify such reliance in his amended complaint. The complaint states that "plaintiff and the members of the class relied on defendants' reports and recommendations during the class period in purchasing securities of B/U, and/or on the artificial impact such reports and recommendations had on the market price for B/U securities." Plaintiff's Amended Complaint at ¶ 31. Defendant argues that this statement of reliance is "fatally defective" because it does not indicate "that he saw or even knew of the purported 'recommendations' and 'reports' on which he claims generally to have relied." Memorandum in Support of Defendants' Motion to Dismiss at 11–12.

It is true that plaintiff does not explicitly state that he saw or knew of the documents, but the complaint includes factual support for the inference that plaintiff and other class members did know of Merrill Lynch's reports and recommendations which allegedly omitted and misstated information, and which, in turn, influenced their decision to purchase Baldwin securities. This is particularly likely in view of the fact that the plaintiffs are alleged to be a class of persons who actually purchased Baldwin securities through defendant. This allegation of reliance at trial would by itself be inadequate to support a factual finding that there was reliance, but that is not the issue now before us. We therefore conclude that plaintiff has made an adequate allegation of reliance for the pleading stage.

D. *Sufficiency of Allegations of Loss*

█ Defendant further contends that plaintiff's allegations of damages are defective because they do not indicate the precise manner in which plaintiff was damaged by defendant's purported misrepresentation. Defendant believes that plaintiff should specifically allege the date(s) and nature of the transaction(s) in issue, as well as whether he continues to own the securities. We believe, however, that plaintiff has alleged his loss adequately.

The Second Circuit has indicated that loss as a result of misrepresentation or omission "is demonstrated rather easily by proof of some form of economic damage." *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 380 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). In this case, plaintiff has done that by alleging that he suffered "economic damage" of at least $125,000. Amended Complaint at ¶ 3. This is sufficient to withstand defendant's motion to dismiss.

### E. *Fraud on the Market*

As an alternative theory for recovery, plaintiff alleges that defendant's deceptive practices and false statements affected the integrity of the market price of B/U securities. Merrill Lynch urges this Court not to recognize plaintiff's "fraud on the market" theory of liability. If we do deem fraud on the market to be a viable theory, defendant further urges us to find that plaintiff has failed to state a claim under it. We cannot agree with defendant on either point.

The fraud on the market theory is now widely accepted as a viable theory of recovery under the federal securities laws. Although the Sixth Circuit has not yet adopted this theory, it has been recognized in the Second, Fifth, Ninth, Tenth, and Eleventh Circuits, as well as in numerous district courts. *See, e.g., Lipton v. Documation, Inc.*, 734 F.2d 740 (11th Cir.1984), *cert. denied, sub nom., Peat, Marwick, Mitchell & Co. v. Lipton,* — U.S. —, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985); *T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma, Irrigation Fuel Authority*, 717 F.2d 1330 (10th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687, (1984); *Panzirer v. Wolf*, 663 F.2d 365 (2d Cir. 1981), *vacated as moot sub nom. Price Waterhouse v. Panzirer*, 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *Rifkin v. Crow*, 574 F.2d 256 (5th Cir.1978); *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). In fact, we have not discovered, nor have we been directed to, any appellate court decision which has rejected the theory. Defendant acknowledges this, but contends that the theory is, nonetheless, inconsistent with Sixth Circuit interpretation of 10b–5 claims and the underlying purpose of 10b–5.

The fraud on the market theory enables a plaintiff to base a securities fraud claim on allegations that the integrity of the market was distorted due to defendant's misrepresentations or omissions. *Blackie*, 524 F.2d at 905–08. An extension of the Supreme Court's decision in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), this theory was developed to address the difficult problem of establishing reliance on an individual basis in class actions under Rule 10b–5. *Blackie*, 524 F.2d at 905–08. Under this theory the plaintiff is not required to prove reliance directly because it is recognized that a purchaser of stock on the open market may be unaware of a specific misrepresentation or may not rely directly on it, but may nonetheless rely generally on the validity of the market price. For example, a buyer may purchase stock because of its favorable price trend or its price earning ratio, but he is also implicitly relying on the accuracy of the underlying representations which helped to determine that stock price.

Defendant attempts to persuade us that such a theory is inconsistent with Sixth Circuit decisions such as *Fryling v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 593 F.2d 736 (6th Cir.1979); *Toledo Trust Co. v. Nye*, 588 F.2d 202 (6th Cir. 1978); *Fridrich v. Bradford*, 542 F.2d 307, 319 (6th Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 769 (1979). We do not read any of these cases as rejecting the underlying rationale of market fraud as a cause of action, however. For example *Fridrich* was an insider trading case in which the Sixth Circuit declined to extend liability to defendants "not causally connected with any claimed loss by plaintiffs who traded on the impersonal

market and who were otherwise unaffected by the wrongful acts of the insider." 542 F.2d at 319. The court went on to imply that plaintiffs who had dealt with or "been influenced in their trading decisions" by an act of the defendants might have an adequate causal connection. *Id.* at 321. Such a statement does not conflict with the fraud on the market theory as we understand it. Market fraud as a theory for recovery does not do away entirely with the need to demonstrate some reliance or causal connection. Rather, in the words of the *Blackie* court, it is only *individual* "proof of *subjective* reliance on *particular* misrepresentations" which is not required "to establish a 10b–5 claim for a deception inflating the price of stock traded in the open market." 524 F.2d at 906 (emphasis added).

 Unless and until the Sixth Circuit explicitly rejects the fraud on the market theory, we believe that the overwhelming weight of authority supports our recognition of that theory as a basis for liability. By holding that market fraud may be a viable cause of action under 10b–5, however, we are not abolishing all requirements of causation and injury. Nor does recognition of this theory necessarily mean, in defendant's words, that "Any broker who makes a material misrepresentation or omission concerning a nationally traded security could be liable to every person who subsequently purchases that security whether or not a customer." Defendant's Reply Memorandum at 27. Instead, our determination today means only that a plaintiff may allege liability where the purported fraud is so broad that it infected the market place and distorted the stock price, making it irrelevant whether plaintiff actually read and relied upon the allegedly misstated information. *See Lipton v. Documation,* 734 F.2d 740, 747 (11th Cir.1984). Thus fraud on the market is an appropriate theory on which to base liability where the defendant's alleged misrepresentations and omissions inflated or distorted open market prices.

We also want to point out the we are now only approving this theory's viability in limited circumstances such as those involved here. In this case, the facts do allege some adequate connection between plaintiff and defendant's acts. Moreover, the plaintiff group does not include *all* the persons who traded Baldwin-United securities on the market during the class period. Rather, the class is limited to those persons who purchased these securities through Merrill Lynch, Pierce, Fenner & Smith. Thus, the plaintiffs by definition *dealt with* defendant and were even more likely than other purchasers on the open market to rely on Merrill Lynch's reports and recommendations. By permitting this limited class to assert market fraud claims we are not allowing "all the world" to assert claims against defendants. Rather, we are relieving this particular plaintiff group of the need for each one to demonstrate his own individual reliance on specific misrepresentations or omissions of Merrill Lynch.

We also find market fraud to be appropriate theory on these facts because the defendant in this case is also a major brokerage house known to have multiple ties with Baldwin-United and information about Baldwin-United's financial condition. Plaintiff alleges that defendant was known by market investors as one of Baldwin-United's creditors, as a seller of Baldwin-United's single premium deferred annuities (SPDAs), and as an investment analyst. Consequently, plaintiff alleges that defendant's favorable recommendations of Baldwin-United securities and their purported omission of material fact during the class period had a significant impact on the market price of Baldwin-United securities. Although we recognize that plaintiff has not proved that Merrill Lynch's reports and recommendations affected the integrity of the market price of Baldwin-United securities, we do believe that plaintiff should be given an opportunity to demonstrate such causation.

Thus, we do not conclude that fraud on the market will be an appropriate theory of recovery in all cases, but we will permit it to be pleaded as a theory of recovery under

10b–5 where all purported class members actually dealt with the defendant in purchasing securities. Moreover, we are persuaded that plaintiffs have alleged sufficient facts to establish a valid claim under that theory.

## ORDER

For the reasons set forth above, defendant Merrill Lynch's motions to transfer, to compel arbitration, and to dismiss plaintiff's amended complaint are all denied.

SO ORDERED.